UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRIANE PADILLA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:19-cv-01608-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(ECF Nos. 16, 22) |

    This matter is before the Court on Plaintiff Lorraine Carol Padilla's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 9, 19).

    At a hearing on February 22, 2021, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

///

///

///

1

**A. Whether Substantial Evidence Supports the RFC**

Plaintiff first argues that the Administrative Law Judge's ("ALJ") Residual Functional Capacity ("RFC") assessment lacks the support of substantial evidence. Plaintiff argues that the ALJ adopted the opinions of Daniela Drake, M.D., the internal medicine consultative examiner, but that opinion and the resulting RFC was inconsistent with the objective and clinical findings of record. Plaintiff points to various pieces of medical evidence such as an x-ray revealing moderate osteoarthritis, an MRI revealing osteoarthritis, and an EMG revealing mild and chronic left L5 radiculopathy. Plaintiff also argues that the ALJ failed to properly evaluate Plaintiff's obesity and its effect on Plaintiff's ability to stand and walk.

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Coleman v. Saul,* 979 F.3d 751, 755 (9th Cir. 2020).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

As an initial matter, State Agency physicians Drs. Sohn and Dipsia opined that Plaintiff could perform light work with a stand/walk limit of 6 hours in an 8-hour day, which was even less restrictive than the ALJ's RFC. (A.R. 270, 282). The ALJ reviewed their opinions and found that additional limitations were warranted based on the information in the examination conducted by Dr. Daniela Drake.

The ALJ"s RFC was supported by the opinion of Dr. Drake, who performed an examination of Plaintiff. (A.R. 724). The ALJ explained the weight given to Dr. Drake as follows:

///

> The claimant underwent a consultative examination at the request of the Agency on April 11, 2018 (Ex. 9F). She reported having carpal tunnel releases in 2017, which helped, however she indicated she still had numbness in her forearm. Dr. Daniela Drake found normal examination of her wrists and hands, other than reduced strength in her left hand. (Id. at 2) Dr. Drake observed that the claimant had normal ambulation and was not using an assistive device. Claimant refused to perform any range of motion exercise of the neck or back. Dr. Drake also indicated that her examination of the knees was limited by claimant's obesity and poor effort to cooperate, although she did appear to have mild edema around the right patella. (Id. at 4). Overall, Dr. Drake limited the claimant to a range of sedentary to light work, as noted in the residual functional capacity above.

(A.R. 23). The ALJ's summary of Dr. Drake's examination and conclusions are supported by Dr. Drake's written report. (A.R. 720-724).

Although Plaintiff points to medical evidence that Plaintiff contends supported further restrictions, in light of Dr. Drake's opinion and examination findings supporting the RFC, and the opinions of state consultative examiners supporting even less limitations, the ALJ's RFC is supported by substantial evidence.

### B. Whether the ALJ Provided Sufficient Reasons to Discount Plaintiff's Subjective Symptom Testimony

Plaintiff next claims that the ALJ failed to properly evaluate Plaintiff's subjective complaints. Plaintiff claims that the ALJ's reasons were conclusory and boilerplate.

The Court looks to whether the ALJ offered clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (A.R. 22). The ALJ 's discussion of the evidence included the following statements relevant to the Plaintiff's subjective symptom testimony:

> She described that she has pain when she tries to turn her neck in any direction, stand or bend at the waist. However she did confirm that she could bend to sit in a vehicle or on the toilet, but cannot sit for very long. . . .
> She underwent anterior cervical discectomy and fusion in March 2016. Post

> operative notes indicate the claimant's wound was healing well, her radicular pain had resolved and the numbness in her upper extremities was slowly improving. (Ex. 11F/11). By her May 27, 2016 appointment, claimant indicated her right upper extremity numbness was mostly resolved and her neck pain was improving. (Id. at 17). . . . Although the claimant testified that she did not have improvement in her pain after the surgery, notes from Dr. Kamran Parsa indicated the claimant was "very happy" with the outcome and her pain was "much improved." (Id. at 25). She was noted to have a normal gait, could heel-toe walk and had normal reflexes in her upper extremities. . . .
>
> The claimant underwent a consultative examination at the request of the Agency on April 11, 2018. (Exh. 9F). . . . Claimant refused to perform any range of motion exercise of the neck or back. Dr. Drake also indicated that her examination of the knees was limited by claimant's obesity and poor effort to cooperate. . . .

(A.R. 22-23).

While the ALJ referred to the discussion of the record generally when discounting Plaintiff's subjective symptom testimony, that discussion went beyond merely citing to the medical evidence. In the discussion of Dr. Parsa's notes in particular, the ALJ identifies specific testimony by the Plaintiff, i.e., that she did not have improvement after surgery, and also the specific contradictory evidence, i.e., that treatment notes indicated that Plaintiff was in fact very happy and much improved. Moreover, the ALJ notes that Dr. Drake found that Plaintiff refused to perform certain exercises and also had a poor effort to cooperate.

Given the specificity in this discussion, the Court finds that the ALJ's reasons were not merely conclusory and boilerplate, and were legally sufficient for discounting Plaintiff's subjective symptom testimony.

**C. Whether the ALJ Sustained His Burden at Step Five of the Sequential Evaluation**

Finally, Plaintiff claims that the ALJ failed to sustain his burden at Step Five of the sequential evaluation. Plaintiff claims that she cannot in fact perform the alternate occupations identified or that they do not exist in significant numbers. Both identified alternate occupations are categorized as light in exertion, which the DOT classifies as requiring walking or standing to a significant degree. Although the vocational expert stated that there would be a 50% reduction in the numbers of the alternate occupations in light of the standing and walking limitations,

Plaintiff contends that this is not a valid assumption. Plaintiff claims that the ALJ erred in not asking additional questions of the vocational expert such as "All the time no more than four? Everyday no more than four? Some days exceed four hours of standing and walking? One day a week/month/semi-monthly as typically performed more than four hours of standing and walking?" (ECF No. 16, at p. 10).

At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. The ALJ explained:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled would be directed by Medical-Vocational Rule 202.11. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such:

| Job Title | Dictionary of Occupational Titles No. | Exertional/Skill Level | Number of Jobs Nationally |
|---|---|---|---|
| Small Products Assembler | 706.684-022 | Light/SVP 2 | 19,500 |
| Photocopy Machine Operator | 207.687-014 | Light/SVP 2 | 14,000 |

> The vocational expert testified that the aforementioned numbers reflect a 50% erosion to account for the claimant's requirement of standing/walking only 4 hours in an 8 hour workday, which falls between a sedentary and light exertional level. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(A.R. 25-26). The hearing transcript supports the ALJ's summary of the testimony. In particular, the ALJ summarized the limitations in the RFC to the Vocational Examiner ("VE") and asked as follows:

///

> Q: If you assume that set of limitations and no others, are there light jobs she could sustain, or would she been limited to sedentary work because of that four hours max on her feet?
>
> A: Well, I do have some light jobs that were able to – I don't want to use the word accommodate but can be performed with only the ability to walk and stand up to four hours.
>
> Q: Could she do the retail cashier job as that's generally performed?
>
> A: Yes.  That particular position can be done, but the numbers would be reduced at least by 50 percent because not all cashier jobs are—it's more the work setting. There are cashier jobs that there's access to a stool, it's in an enclosed area where there's not a lot of walking of standing requirements.

(A.R. 255-256).  The ALJ's questioning does not reveal any ambiguity in the VE's testimony. The ALJ clearly asked whether the four-hour standing limitation would preclude Plaintiff from performing the listed jobs, and the VE responded by explaining that certain of those jobs would allow for reduced standing, such as by having access to a stool.

Given these clear questions and answers, the ALJ did not have a further duty to inquire. Moreover, the ALJ was entitled to rely on the testimony of the VE.  *See Osenbrock v. Apfel* 240 F.3d 1157, 1162–1163 (9th Cir. 2001) ("Here, the ALJ relied on the testimony of a VE that Mr. Osenbrock can perform the duties of a timekeeper in concluding that the Commissioner met his burden of showing that Mr. Osenbrock was capable of performing substantial gainful work that exists in the national economy.").

**D.  Conclusion**

In light of the foregoing, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **March 10, 2021**                          /s/ Erica P. Grosjean
                                                     UNITED STATES MAGISTRATE JUDGE